IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PEERLESS INDUSTRIES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 15-cv-7203 |
| CHARLES LEWIS, NICHOLAS NUCCIO, | ) | |
| and NU-WAY INDUSTRIES, INC. | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Peerless Industries Inc. ("Peerless" or the "Company"), by and through its attorneys Foley & Lardner, LLP, alleges the following as its Complaint against Defendants Charles Lewis ("Lewis"), Nicholas Nuccio ("Nuccio"), and Nu-Way Industries, Inc. ("Nu-Way") (collectively, "Defendants").

### NATURE OF ACTION

1.      Peerless is an Aurora, Illinois company engaged in the business of designing, manufacturing and selling various models of electronic kiosks containing digital displays and menu boards ("Kiosks"). Peerless operates in a fiercely competitive, low margin, high-stakes industry, achieving its market share through the innovation of products and the development of effective and unique marketing strategies.

2.      Until July 2, 2015, Lewis served as the Engineering Manager of the Kiosk Division at Peerless, and until August 6, 2015, Nuccio served as the Lead Kiosk Assembly Manager in that division. In these positions, the Company trusted Lewis and Nuccio with highly sensitive competitive business information, including confidential information and trade secrets

such as the design and manufacture of Kiosks, pricing information, customer and vendor lists, marketing materials, customer order history, and financial, pricing, customer and vendor contact information. In order to protect its confidential information, Peerless required Lewis and Nuccio each to sign an Agreement Regarding Confidentiality, Unfair Competition, and Assignment of Inventions ("Non-Compete Agreements"). The Non-Compete Agreements contained reasonable restrictive covenants, including non-competition, non-solicitation and confidentiality covenants.

3.      Peerless recently learned that Lewis and Nuccio have begun  working for Nu-Way, a direct competitor of Peerless, in violation of their Non-Compete Agreements. Both Lewis and Nuccio are performing the same or substantially similar services to those performed at Peerless. Peerless believes that Lewis and Nuccio have disclosed Peerless' confidential information, and have assisted Nu-Way in soliciting Peerless' customers, vendors and employees to work for Nu-Way, all in directly violation of the Non-Compete Agreements.

4.      Nu-Way, by employing Lewis and Nuccio, by using their knowledge and experience to solicit Peerless' customers and employees, by using their knowledge and experience to unfairly gain information about the most cutting-edge products in the industry to compete against Peerless, and by using Peerless' proprietary and copyrighted images on its website, is unlawfully competing with Peerless, interfering with the Non-Compete Agreements, and violating United States copyright laws.

5.      Peerless therefore seeks to (1) enforce the terms of the Non-Compete Agreements by enjoining Lewis and Nuccio from providing the same or substantially similar services for Nu-Way or any other competitor as they did for Peerless; (2) enjoin Lewis and Nuccio from soliciting Peerless customers, vendors and employees with whom they had contact during their employment or about whom they had confidential information; (3) enjoin Lewis, Nuccio and Nu-

2

Way from using or disclosing Peerless' confidential and trade secret information, and (4) enjoin Nu-Way from continuing to use Peerless' images on Nu-Way's website or anywhere else. Peerless also seeks to recover damages and attorneys' fees.

## PARTIES

6.      Peerless is a private corporation with approximately 300 full-time employees organized under the laws of the State of Illinois with its principal place of business at 1300 White Oak Circle, Aurora, Illinois 60502. Peerless began as a manufacturer of small parts for Motorola during World War II, and has since expanded into the business of manufacturing and selling television mounts, outdoor televisions, projector mounts, digital signage, wireless audio systems, and Kiosks.

7.      Lewis is a natural person residing at 590 Sudbury Lane, Oswego, Illinois 60543 and is a former employee of Peerless.

8.      Nuccio is a natural person residing at 561 Alton Court, Carol Stream, Illinois 60188 and is a former employee of Peerless.

9.      Nu-Way is a private corporation organized under the laws of the State of Illinois with its principal place of business at 555 Howard Drive, Des Plaines, Illinois 60018. Nu-Way, one of Peerless' primary competitors, designs and fabricates precision metal products and provides display solutions. Nu-Way does business around the world.

## JURISDICTION AND VENUE

10.      The Court has federal question subject matter jurisdiction over Peerless' copyright infringement claim pursuant to the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*.This Court has supplemental subject matter jurisdiction over remaining claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case or controversy.

4825-2091-3702.4

11.     This Court has personal jurisdiction over all of the Defendants because they are residents of Illinois.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Lewis, Nuccio and Nu-Way are residents of the Northern District of Illinois and a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois.

13.     Lewis, and Nuccio also consented to jurisdiction and venue in federal courts located in Cook County, Illinois for any litigation arising out of or in any way related to their Non-Compete Agreements. Lewis Non-Compete Agreement, a true and complete copy of which is attached as **Exhibit A**, Art. 5.11; Nuccio Non-Compete Agreement, a true and complete copy of which is attached as **Exhibit B**, Art. 5.11.

**FACTS ENTITLING PEERLESS TO RELIEF**

**I.      Peerless' Proprietary Business Information**

14.     Peerless designs, manufactures and sells, among other products, Kiosks. These Kiosks include mounting bases, digital displays, interactive menu boards, and all-weather encasements with locking mechanisms. Peerless also designs concrete foundations for the placement of these Kiosks in various climates and environments with different weather and soil conditions.

15.     The Kiosk business is highly competitive, with approximately fifteen companies nation-wide vying to produce innovative designs at competitive prices and to market their products to a relatively small number of high-volume buyers. A similarly small amount of customers represents the largest potential for future growth. Despite the presence of a number of small-volume buyers in this market, none of these small-volume buyers consumes enough of the market share of Kiosks to make selling to one or even a number of the small-volume buyers

4

profitable alone. Thus, all companies in the business of designing and selling Kiosks must seek to capture one or more of the high-volume buyers to remain competitive.

16.     Peerless has been in the environmental enclosure and mounting industry for decades and has invested significant time and expense in developing its products as well as fostering relationships with its distributors, vendors and customers across the country. Peerless' network of distributors, vendors and customers is not generally known or available to the public. Peerless has a long span of customer relationships in the environmental enclosure market, with certain prominent customer relationship having lasted for twenty years or more, such as LG Electronics. Peerless has similarly long-term relationships with vendors.  Peerless decided to enter the outdoor Kiosk market approximately three years ago, which required it to build relationships with vendors and specialists, such as an environmental soil conditions expert. Peerless's customer base for its outdoor Kiosk products spans the entirety of the three years in which it has offered such products, some of whom were long-time Peerless customers, such as Starbucks.

17.     Peerless has developed proprietary designs, heating and cooling mechanisms, and glare reduction technologies as well as distributor relationships and marketing techniques that give its outdoor Kiosks and other environmental enclosures a competitive edge over the products manufactured by its competitors. Among its innovations are weatherproof encasements, unique locking mechanisms, and modular designs that allow customization of Kiosks by end-users. Peerless protects these innovations by limiting access to their design specifications to employees who have a need to know either for purposes of production or assembly.

18.     To further protect their designs, Peerless limits distribution of its marketing materials, such as product brochures, and has applied for a copyright in artwork depicting some

5

of its products. The product brochures contain technical specifications (but do not state the mechanism by which such specifications are achieved) and images of Peerless' products and are intended to induce potential customers to contract with Peerless to buy its outdoor Kiosk products and to induce existing customers to purchase new products. Peerless also tailors some of its marketing materials to target specific customer needs. Peerless limits distribution of the tailored materials to customer representatives and high-level Peerless employees, such as Lewis, who attend in-person meetings with these customers.

## II.    The Non-Compete Agreements

19.    High-level Peerless employees who have access to its confidential and proprietary information, such as Lewis and Nuccio, agree to certain confidentiality, non-competition, non-solicitation, and non-disclosure covenants contained in the Non-Compete Agreements.  These Non-Compete Agreements are intended to protect Peerless' confidential and proprietary information from its competitors to help Peerless maintain its market position.

20.    Peerless initially offered Lewis employment in March 2013, Peerless required him to accept certain restrictive covenants contained in the Non-Compete Agreement as a condition of employment. Lewis attempted to negotiate the Non-Compete Agreement's terms, but, because of the information and customers Lewis would have access to in his position at Peerless, Peerless refused. Lewis therefore declined Peerless' offer of employment at that time.

21.    In September 2013, after offered him a unique incentive compensation bonus if he reached certain sales goals, Lewis agreed to accept Peerless' offer of employment and the restrictive covenants contained in the Non-Compete Agreement, without changes to its terms. As part of the incentive compensation bonus, Peerless offered to pay Lewis an additional $15,000 bonus every year in which he brought in $1,000,000 in sales. Lewis never met the $1,000,000

6

threshold and therefore never received the bonus. Lewis signed the Non-Compete Agreement on September 3, 2013. **Ex. A**.

22.     Peerless hired Nuccio as a Cycle Counter for Peerless in September 2011. In July 2013 Peerless promoted Nuccio to Lead Kiosk Assembly Manager, a position he held until he left Peerless in July 2015. As a condition of his promotion to Lead Kiosk Assembly Manager, Peerless required him to accept the same restrictive covenants as Lewis due to the access Nuccio would have to Peerless' confidential information and customer and vendor relations. Nuccio signed his Non-Compete Agreement with Peerless on July 22, 2013. **Ex. B**.

### III.    Confidentiality Obligations

23.     The relevant provisions of Lewis' and Nuccio's Non-Compete Agreements are identical.

24.     Each Non-Compete Agreement defines "Confidential Information" as

any and all trade secrets (as defined by the Illinois Uniform Trade Secrets Act, 765 ILCS 1065/1 *et seq.*) and other confidential, proprietary and/or non-public information, whether in hard-copy, stored electronically, communicated orally or in any other format, that Employee acquires through his/her employment with Peerless and that is not: (i) in the public domain or generally known to the public (other than Confidential Information that became public as a result of a breach of duty of confidentiality); (ii) information known to Employee prior to first receipt of or access to such information in the courts or Employee's employment with Peerless from a third party who does not owe Peerless a duty of confidentiality with respect to such information. Confidential Information specifically includes, but is not limited to, the following: (i) business and marketing plans, practices, and strategies; (ii) methods of operation, techniques, systems, and processes; (iii) files, lists, and other information relating to current, former, and prospective clients, suppliers, and vendors, and compilations and summaries of any of the foregoing, including, without limitation, party identities, correspondence, contracts and contract terms, preferences and needs, and current or historical pricing, proposals, bids, and quotes; (iv) non-published pricing and financial information, including, without limitation, financial and business data and statements, project rates and pricing, cost and

7

performance data, pricing factors and matrices, sourcing information, and profit and profit margin data; (v) technical information including, without limitation, proprietary computer hardware and software, source code, object code, product know-how and show-how, processes, tools, methodologies, designs, research and development, formulae, techniques, inventions, discoveries, improvements and other non-public intellectual property.

**Exs. A**, **B** (Non-Compete Agreement), Art. 2.1.

25.     As part of the Non-Compete Agreements, Lewis and Nuccio acknowledged and agreed that Peerless' confidential information is a valuable and unique asset of, and the property of, Peerless. *Id.*, Art. 2.2. Lewis and Nuccio also agreed that Peerless would be harmed by disclosure or misuse of its confidential information. *Id.* For these reasons, both Lewis and Nuccio agreed that they would not, "at any time, in whole or in part, directly or indirectly, divulge or disclose any Confidential Information to any person or entity." *Id.*, Art. 2.2(a).

26.     Lewis and Nuccio also agreed they would not, "at any time, in whole or in part, directly or indirectly, use any Confidential Information for [their] own benefit or for the benefit of any other person or entity." *Id.*, Art. 2.2(b).

27.     Lewis and Nuccio agreed they would, "upon termination of [their] employment for any reason, immediately cease to use the Confidential Information, and would return to Peerless (or destroy, if so directed by Peerless) all Confidential Information (original and copies, including all Confidential Information stored electronically or otherwise) in [their] possession, custody, and/or control." *Id.*, Art. 2.2(g).

28.     Both Lewis and Nuccio also agreed to return all documents and any other materials of any kind pertaining to the business of Peerless they received or obtained in the course of their employment with Peerless, whether on paper or stored electronically. *Id.*, Art. 2.4.

Lewis and Nuccio agreed to return these documents and materials upon their termination with or without Peerless' request. *Id.*

29.     Finally, Lewis and Nuccio agreed that upon termination of their employment, they would permanently delete, erase and refrain from accessing any Peerless confidential information stored in any computer or hard drive or other electronic data storage device belonging to them. *Id.*

**V.     Non-Compete and Non-Solicitation Obligations**

30.     When Lewis and Nuccio signed their Non-Compete Agreements, they agreed, during the term of their employment with Peerless and for twelve (12) months thereafter, not to

> directly or indirectly (including as a director, investor, owner, partner, employee, consultant, independent contractor or agent, or in any other capacity), work, perform services, render advice, or otherwise provide assistance in the Restricted Area in a capacity that involves performing the same or substantially similar services [they] performed on behalf of Peerless for any person or entity that is engaged in business activities that are competitive with the business conducted by Peerless during the twelve (12) months period preceding the termination of [their] employment with Peerless.

**Exs. A**, **B** (Non-Compete Agreement), Art. 3.2. The "Restricted Area" is defined in the Non-Compete Agreements as "anywhere in the United States." *Id.*, Art. 3.1.

31.     Lewis and Nuccio also agreed not to solicit any of Peerless' customers. In their Non-Compete Agreements, they each agreed, for twenty-four (24) months following termination of their employment with Peerless, not to

> directly or indirectly, for himself/herself or on behalf of any other person or entity, solicit, call on or contract with any Restricted Clients for the purpose of engaging in business activities that are competitive with the business conducted by Peerless during the twelve (12) month period preceding the termination of [their] employment with Peerless, or otherwise induce or encourage any Restricted Clients to curtail, cancel of cease doing business with Peerless.

9

*Id.*, Art. 3.3. The Non-Compete Agreement defines "Restricted Clients" as

> each and every existing Peerless client, customer, supplier, vendor and/or third party with or for whom Peerless has conducted business within the twelve (12) month period preceding the termination of Employee's employment with Peerless and with respect to whom or which Employee had contact for the purpose of conducting business on behalf of Peerless or about whom or which Employee had access to Confidential Information.

*Id.*, Art. 3.1

32.     Lewis and Nuccio furthermore agreed not to solicit away any of Peerless' employees after they terminated their employment with Peerless. For a period of twenty-four (24) months following termination of their employment, they agreed not to

> directly or indirectly, for himself/herself or on behalf of any other person or entity, solicit, induce or encourage any Restricted Employees to terminate their employment or association with Peerless, or otherwise hire or attempt to hire any Restricted Employees.

*Id.*, Art. 3.4.

33.     The Non-Compete Agreement defines "Restricted Employees" are defined in the Non-Compete Agreement as "each and every person employed by Peerless within the six (6) month period preceding the termination of Employee's employment with Peerless and with whom Employee had contact in connection with conducting business on behalf of Peerless or about whom Employee had access to Confidential Information." *Id.*, Art. 3.1.

**VII.    Inventions During the Course of Employment**

34.     Lewis and Nuccio agreed in their respective Non-Compete Agreements that any inventions, discoveries, and improvements made by them during their employment with Peerless were and would forever remain the property of Peerless. This provision encompasses all "Inventions, Discoveries and Improvements made, conceived, expressed, developed or actually or constructively reduced to practice by Employee solely or jointly with others during his/her

4825-2091-3702.4

employment, which are within or in any way related to the existing or contemplated scope of the business of Peerless." **Exs. A**, **B** (Non-Compete Agreement), Art. 4.1. "Inventions, Discoveries and Improvements" includes "ideas, . . . inventions, research, plans for products or services, . . . and designs, whether or not subject to patent or copyright protection." *Id.*

35.     Lewis and Nuccio agreed to list any inventions made prior to working at Peerless in an exhibit attached to the Non-Compete Agreement. *Id.*, Art. 4.2. Neither Lewis nor Nuccio listed any inventions in their respective Non-Compete Agreements, nor attached any exhibits whatsoever to the same. *Id.*

36.     Lewis and Nuccio acknowledged that they would have "no right, title or interest in any patents, copyrights, trademarks, industrial designs or other rights in connection with any works created by Employee, solely or jointly with others during [his] employment, which are within or in any way related to the existing or contemplated scope of the business of Peerless." *Id.*, Art. 4.3.

## VI.     Other Relevant Provisions of the Non-Compete Agreements

37.     In exchange for agreeing to enter into their Non-Compete Agreements, both Lewis and Nuccio obtained employment at Peerless and access to Peerless' confidential information and customer relationships, received specialized training and development opportunities, and received other good and valuable consideration. **Exs. A**, **B** (Non-Compete Agreement), preamble.

38.     Lewis and Nuccio acknowledged that the terms of the Non-Compete Agreements were reasonable and did not impose upon them undue hardship or prevent them from obtaining gainful employment. *Id.*, Art. 5.1. They also acknowledged that their violation of the terms of the Non-Compete Agreement would cause Peerless irreparable injury for which Peerless would have

no adequate remedy at law, and agreed that Peerless was entitled to the immediate entry of injunctive relief without imposition of bond or other security. *Id.*

39.     Additionally, both Lewis and Nuccio agreed that, should Peerless succeed in obtaining equitable relief or other damages for Lewis and/or Nuccio's actual or threatened breach of the Non-Compete Agreement, Peerless would be entitled to recover all costs and expenses, including reasonable attorneys' fees, incurred by Peerless in obtaining such relief. *Id.*

40.     Finally, both Lewis and Nuccio agreed to an affirmative obligation to disclose the existence and terms of this Agreement to any subsequent potential employer or competitor of Peerless for twelve (12) months after leaving their employment. *Id.*, Art. 5.5.

## VIII.   Knowledge of Peerless' Confidential Information.

41.     During his employment with Peerless, Lewis became intimately involved in all aspects of Peerless' outdoor Kiosk business, from design and manufacturing to sales and marketing.

42.     Lewis designed and oversaw the additional design of Peerless' 2015 lineup of outdoor Kiosk products and knows all of the design and engineering specifications, materials lists, manufacturing costs, product specifications, and assembly instructions for these products as well as developing a foundational knowledge of the construction, suppliers to and unique mechanisms of the outdoor display family, including Xtreme and UV2 displays and televisions.

43.     Lewis was also directly involved in preparing the marketing materials for many major in-person meetings with existing and potential customers and end-users and was present at almost all such marketing meetings. Through preparing these materials and meeting face-to-face with customers, Lewis gained unique and valuable knowledge of Peerless' client lists and relationships, including each customer's contact information, order history, and marketing strategy Peerless used to sell to each customer.

12

44. Lewis was primarily responsible for designing the Peerless-AV Xtreme Digital Menu Board ("DMB"), a modular one- to three-monitor outdoor digital Kiosk designed for fast food restaurants or any company requiring outdoor digital and interactive menu boards. Lewis helped to generate the images of this Kiosk used in marketing brochures and therefore had access to these images. On information and belief, Lewis created these images on his personal laptop, rather than a Company computer, during his employment with Peerless and in furtherance of his responsibilities as an employee of Peerless.

45. In November 2014 Lewis was involved in a pitch to a prospective customer. Peerless had been cultivating its relationship with that company for two years, and Lewis knew that company was the quick service restaurant most likely to start using a DMB in the near future. One of the products demonstrated during this pitch was the DMB Lewis had developed and the image of which Lewis had created or helped to create on his laptop while employed by Peerless. Lewis has also been involved in meetings with some of Peerless's most long-standing partners such as Panasonic.

46. Peerless promoted Nuccio from Cycle Counter to Lead Kiosk Assembly Manager, a position in which he was responsible for assisting and supporting the department's procurement, design, development, testing, and assembly of Kiosks.

47. Nuccio also had access to confidential information in his position at Peerless. Nuccio's duties as a the Lead Kiosk Assembly Manager included assisting and supporting Peerless' engineers in the design, development, and testing of products. Nuccio was in charge of the Kiosk assembly areas and was responsible for checking the quality of Peerless' products. Nuccio tested products to make sure they worked as designed and to verify that parts fit together correctly. Nuccio was also responsible for informing the engineers when he discovered a quality

13

or design issue that impacted production so that the issue could be fixed. Nuccio's familiarity with Peerless' manufacturing and design procedures was also necessary because he was responsible for insuring that Peerless' Kiosk parts were manufactured to specification.

48.     The combined knowledge of Lewis and Nuccio encompasses nearly all of Peerless' confidential information pertaining the Company's primary growth energies, Kiosks and displays. Lewis is responsible for designing and creating products and is responsible for Peerless' entire current Kiosk product line. He also knows Peerless' customers and has first-hand knowledge of the marketing techniques used to sell to them. Nuccio knows how to assemble the products Lewis designs, knows the materials list for each product, knows all improvements contained within each finished product and has intimate knowledge of the purchase history of each of Peerless' customers. Working together in direct competition with Peerless, armed with the knowledge they have by virtue of their respective positions at Peerless, they have the potential to undermine Peerless' market position and undercut Peerless' profits.

## IX.     Peerless' Copyrighted Materials

49.     Peerless publishes marketing brochures with unique images of its products that are created by Peerless employees, in which Peerless has an exclusive right to control. At least one of these marketing brochures contains the images of the DMB created with assistance of Lewis during his employment with Peerless. A true and complete copy of this marketing brochure is attached as **Exhibit C**. This marketing brochure includes a copyright mark and copyright date of 2014. *Id.* Because Peerless employees created the image of the DMB, Peerless owns the image and has rights in the same.

50.     On August 14, 2015, Peerless filed with the United States Copyright Office an application for registration of its copyright in the DMB image. A true and complete copy of the copyright application is attached as **Exhibit D**.

14

51.     Shortly after Lewis began working for Nu-Way, Nu-Way began using the image of the DMB on the home page of its website. A printout of Nu-Way's webpage is attached as **Exhibit E**. On information and belief, Nu-Way does not currently offer any products that are similar to the DMB.

52.     The image that appears on Nu-Way's website of the DMB is the same image in which Peerless has submitted its copyright application. Further, the source code for the image of the DMB that appears on Nu-Way's website refers to Peerless no less than eight times.

**X.      Lewis And Nuccio Resign**

53.     Peerless' 2015 Kiosk Product line, including the DMB, was complete when Lewis resigned.  This product line was publicly showcased at a trade show in June 2015. Peerless is in the process of marketing this line to its existing and potential customers.

54.     Peerless involved Lewis in early in-person marketing meetings with long-standing customers due to his extensive knowledge about the Kiosk product line. Nuccio was directly involved in product assembly for any Peerless customer who purchased one of the products from the 2015 Kiosk line, including the DMB.

55.     On June 11, 2015, Lewis submitted to Peerless his resignation of employment, effective Thursday July 2, 2015. Lewis informed individuals at Peerless that he was leaving his employment to work for a sound dampening supplier as Vice President of Operations. Lewis left his employment after 21 months of continuous employment with Peerless.

56.      On information and belief, Lewis began employment with Nu-Way – not a sound dampening suppler – on Monday July 6, 2015 as its Vice President of Operations.   In this position, Lewis is performing the same or substantially similar services for Nu-Way as he was for Peerless before his resignation.

15

57.     On July 25, 2015, Nuccio submitted to Peerless his resignation of employment, effective Thursday, August 6, 2015. During his exit interview, Peerless Human Resources Director Anita Richardson reminded Nuccio of his Non-Compete Agreement and asked Nuccio if he intended to work for a competitor. Nuccio denied having plans to work for any competitor. Nuccio left his employment 24 months after he signed his Non-Compete Agreement, and after almost four years of continuous employment.

58.     On information and belief, Nuccio began employment with Nu-Way on Monday August 10, 2015 and is performing the same or substantially similar services for Nu-Way as he was for Peerless before his resignation.

59.     Suspicious as to the reasons why Nuccio lied to Richardson in his exit interview and as to his decision to leave Peerless shortly after Lewis' departure, Peerless launched an internal investigation to determine whether either Lewis or Nuccio had absconded with any of Peerless' confidential information.

60.     Peerless' information technology team analyzed both Lewis' and Nuccio's Peerless-owned computers and e-mail accounts. Peerless' management interviewed various employees who worked with Lewis and Nuccio to learn whether any other Peerless employees planned to leave the company, or if they knew information about what Lewis and Nuccio intended to do at Nu-Way. Peerless also carefully reviewed the contents of Lewis' and Nuccio's physical files that they had left behind to determine whether any of Peerless' confidential or trade secret information was missing from those files.

61.     The results of Peerless' internal investigation revealed that, even before he had tendered his resignation to Peerless and up to the last day of his employment, Lewis had acted in violation of the covenants in his Non-Compete Agreement by (1) removing highly sensitive

16

confidential and trade secret information from Peerless property without authorization to do so and in violation of his Non-Compete Agreement and other Peerless employment policies, (2) communicating directly with Nu-Way regarding the terms and conditions of his employment with Peerless, (3) assisting Nu-Way in securing new customer and employee relationships, and (4) on information and belief, soliciting existing Peerless employees to join him at Nu-Way to develop a competing product line using Peerless' confidential, proprietary and trade secret information he had knowledge of by virtue of his employment with Peerless. This investigation remains ongoing.

**XI.    Lewis Takes Peerless' Property.**

62.    During his employment with Peerless, Lewis had possession of many documents containing Peerless confidential information, including presentations and other marketing materials created by Peerless to market to specific vendors and potential customers. These presentations and materials contained images of the Kiosk product line, including the DMB.

63.    Lewis kept at least some of these presentations and marketing materials in a file in his desk at Peerless. When Lewis left, he did not return these materials to Peerless, and Peerless did not find any of these materials in his files.

64.    On information and belief, and in violation of his Non-Compete Agreement, Lewis improperly and wrongfully removed Peerless' presentations and marketing materials from its premises just prior to his resignation, and did not otherwise return such documents or disclose his possession thereof despite his contractual obligations to do so.

**XI.    Lewis Violated His Non-Compete Agreement**

65.    Peerless further discovered that Lewis acted against the interests of Peerless by violating his confidentiality, non-competition and non-solicitation covenants in the Non-

Compete Agreement for the direct benefit of himself and for Nu-Way, even before his employment with Peerless officially terminated on July 2, 2015:

a.  On June 11, 2015, Nu-Way offered Lewis employment as its Vice President of Operations by sending an offer letter to Lewis' Peerless e-mail address (clewis@peerless-av.com). The very next day, on June 12, 2015, Lewis submitted his letter of resignation to Peerless.

b.  On June 18, 2015, one week after he received Nu-Way's job offer, Lewis used his Peerless e-mail account to send information to Steve Wiseman, Nu-Way's Executive Vice President of Operations, and Joseph Fijak, Nu-Way's Executive Vice President of Sales and Marketing, regarding companies that produce Kiosks for one of Peerless' biggest potential customers in the fast food market. Continuing to use his Peerless e-mail account, Lewis conversed with Wiseman and Fijak about securing the business of this customer for Nu-Way.

c.  On June 25, 2015, Steve Wiseman , introduced Lewis by way of e-mail to another potential candidate for employment at Nu-Way. Using his Peerless e-mail address, Lewis arranged a phone call interview with that potential employee.

d.  On June 30, 2015, two days before he left his employment at Peerless, Lewis sent numerous messages containing Peerless confidential information and other documents from his Peerless e-mail address to his personal e-mail address (signeffects@hotmail.com). Among other things, Lewis sent himself a description of Peerless' proprietary liquid cooling

18

mechanism for outdoor digital Kiosks, including that cooling system's highly sensitive design and construction specifications. That same day, Lewis also used his Peerless e-mail to send himself copies of: (i) his Non-Compete Agreement; (ii) his current resume; (iii) Peerless' drafting standards; and (iv) a BTU calculator for a digital outdoor Kiosk's air conditioner system.

e.  On July 1, 2015, the day before he left his employment at Peerless, Lewis continued to send Peerless confidential information and other documents from his Peerless e-mail address to his personal e-mail address, including: (i) contact information for one of Peerless' largest customers; (ii) contact information for a local parts supplier; and (iii) contact information for Peerless' soil expert. The soil expert is particularly important to Peerless' business strategy because Peerless has taken great efforts to develop and market its proprietary Kiosk stands and bases tailored to the particular climate and soil conditions where the Kiosk will be used. Without a proper soil analysis, the Kiosks cannot be properly designed and installed.

Copies of these emails, without their attachments (which contain confidential information) are attached as **Exhibit F**.

66.  Peerless investigation into Lewis' wrongful actions continues.

## XII.  Lewis And Nuccio Continue To Violate Their Non-Compete Agreements

67.  Since Lewis began working at Nu-Way, he has attempted to solicit Peerless' vendors by contacting existing Peerless employees, such as Peerless' Vice President of Sales and General Manager, Display Division, Jack McKeague, seeking key vendor contact information. McKeague refused to give him this information.

19

68.     On information and belief, armed with the industry knowledge Lewis and Nuccio bring with them, and due to Lewis' personal knowledge of many customer contacts in the Kiosk marketplace, Nu-Way is and will continue to solicit Peerless' existing and potential customers by offering them the same or similar products as Peerless at the expense of peerless.

69.     Lewis' and Nuccio's knowledge about the design, engineering, assembly, marketing and sale of Peerless' unique Kiosk products provides Nu-Way an unfair windfall of cutting-edge information that will help it develop competing products faster and with fewer resources than it otherwise would on its own.

70.     Furthermore, since Lewis and Nuccio left Peerless, Nu-Way has solicited other key Peerless employees, including one of Peerless' former maintenance managers, among others. Nu-Way has interviewed and continues to interview numerous Peerless employees who have valuable information, know-how and show-how regarding Peerless' Kiosk product lines, marketing strategies and financial information. On information and belief, Nu-Way is contacting and interviewing these employees vis-à-vis information supplied by Lewis and Nuccio.

## XIII.  Irreparable Injury.

71.     The outdoor digital Kiosk market is highly competitive. Nu-Way has gained and will continue to benefit from an unfair and unlawful competitive advantage over Peerless as a result of the knowledge and information supplied to Nu-Way by Lewis and Nuccio. Unless Lewis and Nuccio are restrained from further disclosing the confidential information they obtained through their employment at Peerless, and unless Nu-Way is restrained from using the confidential information already disclosed by Lewis and Nuccio for its benefit in the market, Peerless will suffer immediate and irreparable harm. Defendants' continued unlawful use of Peerless' confidential information will destroy the benefits of all the resources that Peerless has

devoted to developing its confidential information. No cost can be placed on the destruction of these benefits.

72.     Specifically, Peerless will suffer irreparable harm through Defendants' use of Peerless' confidential information, including without limitation the general and specific knowledge that Lewis and Nuccio bring of Peerless' product designs, specifications, and assembly instructions; Peerless' marketing strategies, pricing, customer lists; customer purchase history, and other sensitive, proprietary, and confidential information.

73.     Peerless has no adequate remedy at law for these injuries. Injunctive relief is necessary to forestall continuing injury to ensure that Defendants do not distribute or destroy Peerless' confidential information, steal Peerless' product designs or customers, or undercut Peerless' market position by taking advantage of their knowledge of Peerless' product lines, marketing strategies, and customers.

74.     Lewis and Nuccio both acknowledged that a breach of their Non-Compete Agreements would cause Peerless irreparable harm and acknowledged Peerless' right to an injunction upon breach of these Agreements. **Exs. A**, **B** (Non-Compete Agreement), arts. 1.1(C) and (E); 5.1. While not imposing undue hardship on Defendants, the covenants set forth in the Non-Compete Agreements reasonably protect Peerless' legitimate interest in its confidential information.

## COUNT I

## VIOLATION OF THE FEDERAL COPYRIGHT ACT, 17 U.S.C. §§ 101 *et seq.*

### (Against Defendants Lewis and Nu-Way)

75.     Peerless adopts and realleges the allegations of Paragraphs 1 through 74 of this Complaint as if set forth fully herein.

21

76. Peerless has a pending application for a copyright in the image of its DMB and anticipates full registration shortly.

77. Lewis helped create and had access to this image through his employment at Peerless.

78. Lewis expressly agreed in his Non-Compete Agreement that he has no right, title or interest in any patents, copyrights, trademarks, industrial designs or other rights in connection with any works created by him, solely or jointly with others during his employment, which are within or in any way related to the existing or contemplated scope of the business of Peerless. **Ex. A**, Non-Compete Agreement, Art. 4.1.

79. Nu-Way, since hiring Lewis, has copied and is currently using one of the images for which Peerless has a copyright application pending, the DMB, on its website. Peerless has not authorized Nu-Way to copy or use its images.

80. The image used by Nu-Way on its website matches the image of the DMB created and owned by, Peerless. On information and belief, the image used by Nu-Way on its website was unlawfully copied from Peerless because Nu-Way does currently not manufacture, market, or sell a similar product.

81. As a direct and proximate cause of Lewis' and Nu-Way's infringement of Peerless' image of its DMB, Peerless has suffered and will continue to suffer irreparable injury of an ongoing nature which cannot be adequately remedied by damages or any other remedy at law.

WHEREFORE, Plaintiff Peerless Industries, Inc. requests this Court enter judgment in its favor and against Defendants Lewis and Nu-Way as follows:

a. Requiring Lewis and Nu-Way and all persons acting in concert therewith:

22

i.   to immediately and permanently remove the image of the Peerless-DMB from the Nu-Way website;

ii.  to immediately return all copies of all Peerless material on which any copyrighted image appears or image for which a copyright application is pending, including but not limited to, marketing brochures, images, product specifications, manufacturing information, and pricing information to Peerless;

iii. in the alternative, to destroy all copies of all Peerless material on which any copyrighted image appears or image for which a copyright application is pending, including but not limited to, marketing brochures, images, product specifications, manufacturing information, and pricing information and to verify such destruction to Peerless;

b.   Restraining Lewis and Nu-Way and all persons acting in concert with them from permanently using any Peerless material on which any copyrighted image appears or image for which a copyright application is pending, including but not limited to, marketing brochures, images, product specifications, manufacturing information, and pricing information to Peerless without the express and written authorization of Peerless Industries, Inc.;

c.   Awarding Peerless damages from Lewis' and Nu-Way's infringement of Peerless' valid and enforceable copyright, in an amount to be determined at trial; and

23

d.      Awarding Peerless such other relief as the Court deems just and appropriate.

## COUNT II

## BREACH OF CONTRACT

### (Against Defendants Lewis and Nuccio)

82.     Peerless adopts and realleges the allegations of Paragraphs 1 through 81 of this Complaint as if set forth fully herein.

83.     Lewis' and Nuccio's Non-Compete Agreements are valid and enforceable contracts and are ancillary to their employment with Peerless.

84.     Lewis and Nuccio received benefits in addition to the standard employment package at Peerless in consideration for entering into these Non-Compete Agreements. These benefits include, but are not limited to:

a.      twenty-one (21) months of continued at-will employment in a managerial position for Lewis;

b.      an incentive bonus compensation program for Lewis if he reached certain sales goals during a given year, which is not offered to other Peerless employees;

c.      over twenty-four (24) months of continued at-will employment and a promotion to a supervisory position for Nuccio;

d.      access to certain confidential, proprietary and trade secret information about its products, marketing strategies, financial and other information not available to all Peerless employees;

e.      access to and information about customers and vendors not available to all Peerless employees; and

24

f.   specialized training and development.

85.   Peerless would not have provided these benefits to Lewis and Nuccio if they had not agreed to the restrictive covenants in their Non-Compete Agreements. Peerless specifically notified Lewis that his employment as Engineering Manager was contingent on him signing the Non-Compete Agreement.

86.   As set forth above, Lewis' and Nuccio's Non-Compete Agreements with Peerless imposed the following obligations on Lewis and Nuccio as conditions of their employment with Peerless:

a.   The obligation not to engage in the unauthorized use and/or disclosure of Peerless' confidential information (**Exs. A**, **B** (Non-Compete Agreement), Art. 2.2);

b.   The obligation not to compete against Peerless for a period of twelve (12) months following termination of employment with Peerless (**Exs. A**, **B** (Non-Compete Agreement) Art. 3.2);

c.   The obligation to refrain from soliciting Peerless' customers and employees for a period of twenty-four (24) months following termination of employment with Peerless (**Exs. A**, **B** (Non-Compete Agreement) arts. 3.3, 3.4).

87.   Lewis and Nuccio have breached their contractual obligations by, among other things, (i) improperly acquiring Peerless' confidential information for purposes other than to benefit Peerless, including but not limited to copying Peerless' confidential information and transmitting it by e-mail to personal e-mail addresses; (ii) sharing such information with Defendant Nu-Way, and causing or allowing Nu-Way to disseminate this confidential

25

information to its employees and over the Internet without Peerless' consent or authorization; (iii) accepting employment with Nu-Way to perform the same or substantially similar services as they did for Peerless; (iv) accepting positions at Nu-Way that has and will continue to result in the disclosure and use of Peerless' confidential information without Peerless' consent or authorization and to Peerless' detriment; (v) attempting and continuing to solicit Peerless' customers and vendors with whom they worked while employed at Peerless; and (vi) attempting and continuing to solicit Peerless' key employees for employment at Nu-Way to compete with Peerless.

88.     Lewis further breached his confidentiality obligations by transmitting Peerless' confidential information via his Peerless e-mail address to his personal e-mail address.

89.     Lewis also breached his confidentiality and other obligations by removing confidential information from Peerless' premises and not returning such confidential information to Peerless when he terminated his employment.

90.     Peerless has complied with its obligations under the Non-Compete Agreements.

91.     As a direct and proximate result of Lewis' and Nuccio's breach and threatened breach of their obligations under their Non-Compete Agreements, Peerless has suffered and will continue to suffer irreparable injury of an ongoing nature that cannot be adequately remedied by damages or any other remedy at law.

92.     As a direct and proximate result of Lewis' and Nuccio's breach and threatened breach of their obligations under their Non-Compete Agreements, Peerless has suffered and will continue to suffer additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation.

26

WHEREFORE, Plaintiff Peerless Industries, Inc. requests this Court enter judgment in its favor and against Defendants Lewis and Nu-Way as follows:

    a.    Restraining and enjoining Lewis and Nuccio and all persons acting in concert with them:

        i.    for a period of twelve (12) months from entry of any relief from directly or indirectly competing with Peerless in violation of their Non-Compete Agreements;

        ii.    from directly or indirectly, and in any manner, using or disclosing any confidential information belonging to or originating from Peerless;

        iii.    for a period of twenty-four (24) months from entry any relief from directly or indirectly soliciting business from or diverting the business of a Peerless customer or vendor in violation of their Non-Compete Agreements with Peerless;

        iv.    for a period of twenty-four (24) months from entry of any relief from directly or indirectly soliciting employees of Peerless for employment at Nu-Way or anywhere else.

    b.    Awarding Peerless damages resulting from Lewis' and Nuccio's breach of their Non-Compete Agreements, in an amount to be determined at trial;

    c.    Awarding Peerless attorneys' fees, costs, and expenses incurred in connection with this action pursuant to Art. 5.1 of their Non-Compete Agreements; and

4825-2091-3702.4

d.    Awarding Peerless such other relief as the Court deems just and appropriate.

## COUNT III

## TORTIOUS INTERFERENCE WITH CONTRACT

### (against Defendant Nu-Way)

93.    Peerless adopts and realleges the allegations of Paragraphs 1 through 92 of this Complaint as if set forth fully herein.

94.    Peerless and Lewis are parties to a Non-Compete Agreement, a valid and enforceable contract that imposes upon Lewis an affirmative duty to disclose its existence and terms to any potential future employees for one year after leaving his employment with Peerless.

95.    Peerless and Nuccio are parties to a Non-Compete Agreement, a valid and enforceable contract that imposes upon Nuccio an affirmative duty to disclose its existence and terms to any potential future employees for one year after leaving his employment with Peerless.

96.    Both Lewis and Nuccio were contacted by, and solicited to work for, Peerless' direct competitor Nu-Way while they were still employed by Peerless.

97.    On information and belief, Nu-Way has knowledge of the existence and terms of Lewis' and Nuccio's Non-Compete Agreements, and had such knowledge before it offered employment to either Lewis or Nuccio or both. On information and belief, Nu-Way also has knowledge that both Lewis and Nuccio are prohibited from competing against Peerless, are prohibited from soliciting Peerless' customers and vendors, and are prohibited from soliciting Peerless' employees under the terms of the Non-Compete Agreements. On information and belief, Nu-Way also knows that both Lewis and Nuccio are prohibited from obtaining, using, or sharing any of Peerless' confidential information with any third party, including with Nu-Way.

28

98.     Nu-Way knowingly, intentionally, willfully, maliciously, and without justification induced Lewis and Nuccio to breach their Non-Compete Agreements by employing them in direct competition with Peerless.

99.     Nu-Way knowingly, intentionally, willfully, maliciously, and without justification induced Lewis and Nuccio to breach their Non-Compete Agreements by, on information and belief, soliciting Peerless' customers and vendors.

100.    Nu-Way knowingly, intentionally, willfully, maliciously, and without justification induced Lewis and Nuccio to breach their Non-Compete Agreements by soliciting Peerless' employees for employment at Nu-Way.

101.    Nu-Way knowingly, intentionally, willfully, maliciously, and without justification induced Lewis and Nuccio to breach their Non-Compete Agreements by obtaining, using, and sharing Peerless' confidential information with Nu-Way.

102.    Lewis and Nuccio have breached their contractual obligations under their valid and enforceable Non-Compete Agreements as set forth in Paragraphs 98-100 of this Complaint.

103.    As a result of Nu-Way's willful, intentional, and malicious interference with Lewis' and Nuccio's contractual obligations owed to Peerless, Peerless has suffered and will continue to suffer irreparable injury for which there is no remedy at law.

WHEREFORE, Plaintiff Peerless Industries, Inc. requests this Court enter judgment in its favor and against Defendants Lewis and Nu-Way as follows:

  g. Restraining and enjoining Nu-Way and all persons acting in concert with Nu-Way:

   i. for a period of twelve (12) months from entry of any relief, from directly or indirectly employing Lewis or Nuccio;

ii. for a period of twenty-four (24) months from entry of any relief, directly or directly using Lewis or Nuccio or any knowledge derived from them for the purpose of soliciting business from Peerless' customers or vendors or diverting their business from Peerless;

iii. for a period of twenty-four (24) months from entry of any relief, from directly or directly using Lewis or Nuccio or any knowledge derived from them for the purpose of soliciting for employment any employee of Peerless;

iv. permanently from using any of Peerless' confidential information.

h. Awarding Peerless compensatory and punitive damages resulting from Nu-Way's tortious interference with Lewis' and Nuccio's Non-Compete Agreements, in an amount to be determined at trial;

i. Awarding Peerless attorneys' fees, costs, and expenses incurred in connection with this action pursuant to Art. 5.1 of the Non-Compete Agreements; and

j. Awarding Peerless such other relief as the Court deems just and equitable.

## <u>COUNT IV</u>

## <u>TORTIOUS INTERFERENCE WITH VALID BUSINESS EXPECTANCY</u>

### (against Defendant Nu-Way)

104. Peerless adopts and realleges the allegations of Paragraphs 1 through 103 of this Complaint as if set forth fully herein.

105.    Peerless has expended great effort and expense to innovate in the outdoor digital Kiosk market, and as a result of this effort and expense has a valid and reasonable business expectancy in this market.

106.    Peerless was likely to obtain an economic benefit from this business expectancy.

107.    Lewis and Nuccio have intimate knowledge of Peerless' products, clients, marketing strategies, and other confidential information as a result of their employment with Peerless.

108.    Nu-Way had knowledge of Peerless' business expectancy, particularly as it related to the lucrative and large-volume market of the fast food restaurant industry.

109.    Nu-Way knowingly, intentionally, willfully, maliciously, and without justification interfered with and continue to interfere with Peerless' business expectancy by employing Lewis and Nuccio in violation of their Non-Compete Agreements.

110.    Nu-Way's intentional and unjustified employment of Lewis and Nuccio in violation of their Non-Compete Agreements prevents Peerless from realizing its business expectancy because of the unfair and unjust competition from its former employees, the loss of its confidential information, the loss of its employees, and the potential loss of customers and vendors.

111.    As a result of Nu-Way's willful, intentional, and malicious interference with Peerless' business expectancy, Peerless has suffered and will continue to suffer irreparable injury for which there is no remedy at law.

WHEREFORE, Plaintiff Peerless Industries, Inc. requests this Court enter judgment in its favor and against Defendants Lewis and Nu-Way as follows:

a. Restraining and enjoining Nu-Way and all persons acting in concert with Nu-Way:

    i. for a period of twelve (12) months from entry of relief, from directly or indirectly employing Lewis or Nuccio;

    ii. for a period of twenty-four (24) months from entry of relief, from directly or directly using Lewis or Nuccio or any knowledge derived from them for the purpose of soliciting business from Peerless' customers or vendors or diverting their business from Peerless;

    iii. for a period of twenty-four (24) months from entry of relief, from directly or directly using Lewis or Nuccio or any knowledge derived from them for the purpose of soliciting for employment any employee of Peerless;

    iv. permanently from using any of Peerless' confidential information.

b. Awarding Peerless compensatory and punitive damages resulting from Nu-Way's tortious interference with Lewis' and Nuccio's Non-Compete Agreements, in an amount to be determined at trial;

c. Awarding Peerless attorneys' fees, costs, and expenses incurred in connection with this action pursuant to Art. 5.1 of the Non-Compete Agreements; and

d. Awarding Peerless such other relief as the Court deems just and equitable.

4825-2091-3702.4

Dated:  August 17, 2015     Respectfully submitted,
              PEERLESS INDUSTRIES INC.


              /s/ James D. Dasso

              James D. Dasso Ill. Bar No. 6193545
              John L. Litchfield Ill. Bar No. 6299351
              Michael J. Casner Ill. Bar No. 6316585

              Foley & Lardner LLP
              321 North Clark Street, Suite 2800
              Chicago, IL 60654-5313
              312.832.4500
              312.832.4700

              *Attorneys for Plaintiff Peerless Industries, Inc.*

**CERTIFICATE OF SERVICE**

I, John L. Litchfield, an attorney, do hereby certify that on August 17, 2015, I electronically filed the foregoing Complaint for Injunctive and Other Relief with the United States District Court for the Northern District of Illinois through the Court's CM/ECF system. I also served, pursuant to Federal Rule of Civil Procedure 4, copies of this Complaint for Injunctive and Other Relief on all named Defendants as follows:

Charles L. Lewis
590 Sudbury Circle
Oswego, Illinois 60543

Nicholas J. Nuccio
561 Alton Court
Carol Stream, Illinois 60188

Nu-Way Industries, Inc.
555 Howard Avenue
Des Plaines, Illinois 60018

/s/ John L. Litchfield
_____

John L. Litchfield

34